IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KLLM TRANSPORT SERVICES LLC,**
**d/b/a KLLM LOGISTIC SERVICES,**
**individually, and as assignee of McLane**
**Company, Inc. d/b/a McLane Foodservice**                                    **PLAINTIFF**

v.                              Case No. 4:24-cv-00294 KGB

**SAFE TRANSPORT INC.**                                                                **DEFENDANT**

## ORDER

Before the Court is the motion for default judgment of KLLM Transport Services, LLC d/b/a KLLM Logistics Services, individually ("KLLM"), and as assignee of McLane Company, Inc. d/b/a McLane Foodservice ("McLane") (collectively "Plaintiff") against defendant Safe Transport Inc. ("Safe Transport") (Dkt. No. 12). For the following reasons, the Court grants Plaintiff's motion for default but declines to enter judgment at this time, subject to further briefing from Plaintiff or a hearing on damages (*Id.*).

**I.      Factual And Procedural Background**

On April 3, 2024, Plaintiff filed this lawsuit against Safe Transport alleging that it is liable to Plaintiff under the Carmack Amendment and that Safe Transport defaulted on its contractual agreement to KLLM under the Broker-Carrier Transportation Agreement ("Agreement") (Dkt. No. 1). According to the record currently before the Court, Safe Transport was served on September 17, 2024 (Dkt. No. 9). Safe Transport, to date, has not filed an answer or responsive pleading as required by the Federal Rules of Civil Procedure, and the Clerk entered a Clerk's default against Safe Transport (Dkt. No. 11).

On April 8, 2022, Safe Transport executed a Bill of Lading as a motor carrier to transport a cargo shipment consisting of Captain D's breadsticks ("the Cargo"), from Tyson Foods c/o Bama

Cold Storage LLC ("the Shipper") in Tulsa, Oklahoma to MBM Newnan in Newnan, Georgia (Dkt. Nos. 12-1, ¶ 2; 12-2). On April 9, 2022, while the Cargo was in interstage carriage, Safe Transport's vehicle was involved in a single vehicle accident which caused the truck and trailer to rollover (Dkt. No. 12-1, ¶ 3). On April 13, 2022, McClane made demand on KLLM for payment (*Id.*, ¶ 4). KLLM sent its own notice and presentation of loss and damage claim concerning the Cargo for damages and forwarded McClane's claim in the amount of $26,625.85 to Safe Transport (*Id.*). A claim denial was sent to KLLM and forwarded to Safe Transport (*Id.*, ¶ 5). KLLM has demanded payment of Safe Transport, but the amount remains unpaid (*Id.*, ¶ 6). KLLM, under its contract with McClane, paid McClane and took assignment of McClane's rights in the claim (*Id.*, ¶ 7). Plaintiff claims actual damages in the amount of $26,625.85 (*Id.*, ¶ 8). Plaintiff seeks costs and expenses totaling $1,011.09 (Dkt. No. 12-1, ¶ 9). Plaintiff also requests that the Court award pre and post judgment interest (Dkt. No. 12, ¶ 4).

## II.    Default Judgment

Plaintiff moves for entry of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 55 contemplates a two-step process for the entry of default judgments. *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 796 F. Supp. 2d 946, 951 (N.D. Iowa 2011) (citation and internal quotation marks omitted). First, pursuant to Rule 55(a), the party seeking a default judgment must have the Clerk of Court enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend. *Id.* Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule. *Id.* Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b). *Id.*

Rule 55(b)(1) states that, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1).

"Entry of a default judgment . . . [is] committed to the sound discretion of the district court. Default judgments, however, are not favored by the law." *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). Once a defendant is in default, the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true." 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688.1 (4th ed. 2018) (West) (citations omitted). However, the court must ensure that the "unchallenged facts constitute a legitimate cause of action" prior to entering final judgment. *See Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d ed.)).

> In determining whether to enter default judgment, the Court may consider:
>
> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

10A Charles A. Wright, *et al.*, *Federal Practice & Procedure*, § 2685 (4th ed. 2018) (West) (citations omitted) (collecting cases). "Default judgment for failure to defend is appropriate when the party's conduct includes willful violations of court rules, contumacious conduct, or intentional delays. On the other hand, default judgment is not an appropriate sanction for a marginal failure

3

to comply with time requirements." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (internal citations and quotation marks omitted).

Based on the above factors and case law, the Court determines that default is appropriate and grants Plaintiff's motion for default (Dkt. No. 12).  However, the Court declines to enter judgment at this time on the default, subject to further briefing from Plaintiff or a hearing on damages for the reasons explained in this Order.

As of April 9, 2022, Safe Transport is liable to Plaintiff under the Carmack Amendment and had failed to pay the amounts due under the Agreement.  Safe Transport has failed to appear in this action, defend against Plaintiff's allegations, or otherwise respond to the pending motion. The Court has reviewed the factual allegations of the complaint and the language of the exhibits attached to the complaint and motion (Dkt. Nos. 1; 12).  These allegations, taken as true, entitle Plaintiff to the relief it seeks with respect to default.  However, the Court is unable to enter judgment for a sum certain as to all categories of relief requested by Plaintiff.  Therefore, consistent with the terms of this Order, the Court requests further briefing from Plaintiff or a hearing on damages.

### III.     Conflict Of Laws

The Court will now address what law governs the Agreement.  Under the Agreement, the parties agreed that the Agreement would be subject to the laws of the State of Mississippi (Dkt. No. 12-3, at 12, ¶ 15).

This is a diversity action for breach of contract (Dkt. No. 1).  In determining a choice-of-law issue in a diversity action, a federal court generally looks to the choice-of-law principles of the forum state.  *Simpson v. Liberty Mut. Ins. Co.,* 28 F.3d 763, 764 (8th Cir. 1994).  Thus, Arkansas' choice of law principles govern what state's substantive law applies.

Arkansas courts will enforce a contractual choice of law provision, provided that the law selected is reasonably related to the contract at issue and does not violate a fundamental public policy of the forum state. *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.,* 926 F. Supp. 835, 841 (E.D. Ark. 1996) (collecting cases), *aff'd,* 112 F.3d 513 (8th Cir. 1997).

In *Britelink, Inc. v. TeleCorp PCS, Inc.*, a court in this district held that a contractual choice of law provision that selected Virginia law was unenforceable because applying Virginia law would violate a fundamental public policy of the forum state, even though Virginia law was reasonably related to the contract at issue. Case No. 3:03-cv-00207 GTE, 2004 WL 5509416, *3-4 (E.D. Ark. May 6, 2004). The court looked at a variety of issues to determine whether the state of Virginia was reasonably related, including the location of the negotiations, where the contract was executed, and where contractual obligations were performed. *Id.*, *4-5. The court determined that Virginia was reasonably related to the contract because defendant's headquarters were in Virginia for the life of the contract, plaintiff returned the executed contract to Virginia, and the contract termination letter originated in Virginia. *Id.*, *5.

For the second factor, the *Britelink* court first determined that Arkansas had the most significant relationship to the contract at issue, examining the types of contacts outlined in Restatement (Second) Conflicts of Law § 188. *Id.*, *6-7. The court then compared the relevant franchise practice statutes from Virginia and Arkansas and found that Virginia law displaced the fundamental public policy concerns of the Arkansas law. *Id.*, *8. The court reasoned that "[a]ppling Virginia law, rather than Arkansas law, would result in a substantial loss of protection provided by [Arkansas law] for Arkansas franchisees." *Id.*, *7.

According to the Agreement between KKLM and Safe Transport, the parties agreed that "[t]he terms of this contract shall be governed by the laws of the State of Mississippi, subject to

5

applicable federal law rules and regulations and disregarding any choice-of-law principle under which Mississippi would look to the laws of another jurisdiction." (*Id*.).

The Court will now determine: (1) if the law selected by the parties in their Agreements is reasonably related to the Agreement at issue and (2) whether that choice of law violates a fundamental public policy of the forum state.

According to the complaint and Corporate Disclosure Statement, KLLM is a Texas limited liability company ultimately owned by two trusts held by two individual Mississippi residents, with its principal place of business in the State of Mississippi (Dkt. Nos. 1, ¶ 1; 3).  Safe Transport is a Georgia corporation, in the business of transporting goods in interstate commerce, and it has a registered agent for service in Magee, Mississippi (Dkt. No. 1, ¶ 2).  Based on the record before the Court, the Court determines there is a connection between the parties and the state of Mississippi because of the governing law provision in the Agreement and Mississippi being KLLM's principal place of business.  Further, the Court determines that there would not be a violation of a fundamental public policy of Arkansas if the Court applied Mississippi law.

### IV. Damages

Because the Court enters default, the Court now must determine the amount of damages for which Safe Transport is liable.  Once a defendant is in default, the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true." 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2688.1 (4th ed. 2018) (West) (citations omitted).  Under Rule 55(b)(2), the Court may hold an evidentiary hearing to determine damages, but a hearing is not required if the amount is ascertainable from definite figures, facts, and evidence provided by plaintiffs. *Holman v. National Postal Mail Handlers Union,* 117 F.3d 1422 (8th Cir. 1997) (per curiam); *Taylor v. City of Ballwin,* 859 F.2d 1330, 1332-33 (8th Cir. 1988); Fed. R.

Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

Pursuant to Rule 55(b), to establish damages, Plaintiff has produced the affidavit of Cassie Icamina, the Vice President of Sales & Logistics for KLLM, attached to Plaintiff's motion for default judgment (Dkt. No. 12-1, Icamina Aff.).  Ms. Icamina has personal knowledge of the records maintained by KLLM with respect to the Agreement with Safe Transport (*Id.*, ¶ 1). According to Ms. Icamina, defendants have failed to pay Plaintiff $26,625.85 in connection with the Agreement (*Id.*, ¶ 8).  Ms. Icamina provides a calculation of costs and expenses of $1,011.09 which she also claims is due and owing (*Id.*, ¶ 9).

Plaintiff requests "contractual pre-judgment interest," but the Court cannot find a provision in the Agreement addressing pre-judgment interest (Dkt. Nos. 2, at 5; 12-3, at 10-12).  Further, Ms. Icamina has not provided a calculation of pre-judgment interest in her affidavit (Dkt. No. 12-1).

The Court understands that under Mississippi Code Annotated § 75-17-7 the Court is not required to award pre-judgment interest but is permitted to do so from a date of the Court's choosing, but not prior to the date on which the complaint was filed. *Indemnity Ins. Co. of North America v. Guidant Mut. Ins. Co.*, 99 So.3d 142, 156–57 (Miss. 2012).  Alternatively, a court may determine that interest should be calculated only from the date of the judgment, rather than before. *Indemnity Ins.*, 99 So.3d at 157.  A court may award pre-judgment interest under Mississippi law when "'the amount due [was] liquidated when the claim [was] originally made or . . . the denial of [the] claim [was] frivolous or in bad faith,' *and* (2) [when] the complaint includes a demand for pre-judgment interest." *PierCon, Inc. v. Brierfield Ins. Co.*, 189 So.3d 1238, 1245–46 (Miss. Ct. App. 2016) (quoting *Indemnity Ins.*, 99 So.3d at 157) (other citation omitted)).  Here, on the record

before the Court, the amount due was liquidated when the claim was made, and the complaint included a demand for pre-judgment interest (Dkt. No. 1, at 5, ¶ 23), but even though Plaintiff met these requirements for an award of pre-judgment interest, the Court does not have sufficient information to determine an amount of pre-judgment interest that may be appropriate to award in this case. Plaintiff references "contractual pre-judgment interest" in the complaint (Dkt. No. 1, ¶ 23) but does not cite to a provision of the Agreement containing such a provision, and Ms. Icamina's affidavit does not address pre-judgment interest.

Accordingly, the Court is unable to enter judgment for a sum certain as to all categories of relief requested by Plaintiff at this time. Therefore, the Court requests further briefing from Plaintiff or a written request for a hearing on this issue within 30 days of the date of this Order.

### V. Conclusion

For these reasons, the Court enters default against Safe Transport. The Court, consistent with the terms of this Order, requests further briefing from Plaintiff or a hearing on damages before entering a judgment.

So ordered this 8th day of September, 2025.

_Kristine G. Baker_
Kristine G. Baker
Chief United States District Judge